**UNITED STATES ex rel. MIGNOZZI v. DAY,**
**Commissioner of Immigration.**

**No. 401.**

Circuit Court of Appeals, Second Circuit.

July 7, 1931.

CHASE, Circuit Judge, dissenting.

Gaspare M. Cusumano, of New York City, for appellant.

George Z. Medalie, U. S. Atty., of New York City (Morton Baum, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

Mignozzi, the relator, a barber by trade, came to the United States from Italy as a boy of thirteen or fourteen. Since then he has always lived here, has married a woman born in this country, and has a child eleven years old. All his relatives are in this country; he has never become a public charge, except for eleven days in a hospital while sick of pneumonia. On June 15, 1925, he pleaded guilty to two indictments, one in a single count, the other in two, upon all of which he was sentenced generally by the District Court of the Southern District of New York to a term of seven years, the "sentence to run concurrently." The first indictment was for possessing on April 21, 1925, a counterfeit twenty dollar bill with intent to defraud; with him was indicted one Day, as an abettor. The first count of the second indictment was for abetting, along with Helen Prince, Day and Arthur Schieble, on April twentieth, one Bernard Prince, in passing another twenty dollar bill. The second count of the same indictment was for abetting, along with Day, Bernard Prince and Schieble, on April twenty-first, Helen Prince in the possession of three twenty dollar bills with intent to defraud. One of these was the same as that alleged to have been already passed by Bernard Prince on April twentieth.

The relator was ordered deported as an alien who had been "sentenced more than once to * * * a term of imprisonment" of one year or more (section 155, title 8, U. S. C. [8 USCA § 155]); and this is the only question involved. We held in Johnson v. U. S. ex rel. Pepe, 28 F.(2d) 810, when an alien was sentenced to consecutive terms of one year for separate arsons, committed at different times and of different buildings, that it made no difference that the crimes were prosecuted in a single indictment. To this we adhere. The Ninth Circuit went farther in Nishimoto v. Nagle, 44 F.(2d) 304, and sustained a deportation where an alien in California had issued five fraudulent cheques at separate times, had been prosecuted for these offenses under several counts in one indictment, and had been sentenced upon each count, the sentence to be executed concurrently, as here. The court relied in part upon the peculiar system of punishment obtaining in California, by which the parole board of that state may deal with such sentences separately, but in addition held that two convictions were enough, provided that there was a formal sentence on each. Sibley, C. J., in Opolich v. Fluckey, 47 F.(2d) 950, held the opposite in a case which, so far as we can see, is the same as that at bar; though he supposed that to do so he must decline to follow Johnson v. U. S. ex rel. Pepe, supra. With these exceptions we have not found any decisions dealing with the question.

Congress might have made the test merely the conviction for any shameful crime, or conviction for such a crime if a sentence of one year might be imposed. Either would have embodied an intelligible policy, but neither was chosen. On the contrary, a judge must actually sentence the alien to imprisonment for a year, and thus indicate that the particular circumstances of the offense warrant so much reprobation. If the alien has lived here for five years, the judge must do this twice. We agree that each count in an indictment, like each indictment itself, is a separate charge, and that nothing is lost or gained by the form of pleading adopted. Moreover, there must be a judgment upon

each charge, however pleaded, in order to dispose of it; the only judgment in a criminal case is the sentence; procedurally a general sentence to "run concurrently" is a separate sentence on each count. We are as clear, however, that although a judge does in this sense impose more than one sentence in such a situation, he sentences the convict to one term only; that though he imposes several sentences, he exacts but one punishment; in short that he does not "more than once" sentence "to a term of imprisonment." It is the duplication of penalties which counts; and the test of these is practical, not procedural. Any other construction leads to absurd results.

First, it is a fiction to regard the covering of several offenses by a single penalty, as the imposition of the same imprisonment anew each time. Punishment consists in the pains endured, and the lapse of the term ends these; they cannot be exacted a second time. Congress can scarcely have been partial to a multiplication of the scholastic substance, while all the accidents remain single. Second, on any other theory it will follow that concurrent sentences upon any counts whatever, though they be no more than formal variants, will satisfy the statute. Such a result would certainly pervert the meaning. A single sale of opium, for example, may be laid as a violation of that statute which requires the seller to have a permit, and again of that other which requires the same of the buyer. A counterfeiter may be indicted, as here, in one count for possessing a bill, and in another for passing it, though he cannot pass it without having possession. In each case two crimes are charged, and judges have indeed been found willing to impose consecutive sentences in such cases. But ordinarily a judge will dispose of all the counts at once, since there has been really only one offense. Yet if the government is right, the alien must be deported. We cannot ascribe to Congress a purpose to stake so grave a consequence on verbal tricks, or to put vital interests in peril on a prosecutor's whim.

We have suggested a single crime, procedurally proliferated. Probably this was just that, and for this reason the judge dealt with it by a single sentence. The record is indeed extremely meagre, but it is consistent with all three counts that Mignozzi with four confederates had guilty possession of four counterfeit twenty dollar bills, of which they succeeded in passing one. If so, Mignozzi may have been formally guilty (1) of passing the bill, (2) of its possession before passing, and (3) of the possession of each of the other three. Whether all this could be treated as four, or even five, crimes is immaterial; morally the transaction was a single wrong, to be expiated by a single punishment, and the judge seems so to have regarded it.

In general we are not disposed to read this particular provision with large latitude. It is of course true that all aliens are here on sufferance; we may deport them when we please, and indeed nobody can much complain who finds himself ousted within a period, say of the five years which mark the line. But this alien has grown to manhood here. To root up all those associations which we call home, to banish him to be an outcast in a country of whose traditions and habits he knows nothing, and where his alienage is a daily, living fact, not a legal imputation—these are consequences whose warrant we may properly scrutinize with some jealousy, and insist that logic shall not take the place of understanding. While of course the judge could have reached the same result as he did by dividing the sentence between the counts and cumulating the divisions, we cannot change the record in that way. Dimmick v. Thompson, 194 U. S. 540, 551, 24 S. Ct. 780, 48 L. Ed. 1110; U. S. v. Peeke, 153 F. 166, 168, 12 L. R. A. (N. S.) 314 (C. C. A. 3). The result would not express his apparent purpose, nor the meaning of the law. A single crime visited with more than two years' imprisonment is quite another thing from two crimes, each punished by a year; and the judge who proceeds in one way means something different from one who proceeds in the other.

Order reversed; relator discharged.

CHASE, Circuit Judge, dissents without opinion.